OPINION
{¶ 1} Plaintiff-appellant/cross-appellee C.J. Mahan Construction Co. appeals the November 19, 2004 Judgment Entry of the Stark County Court of Common Pleas granting summary judgment in favor of defendant-appellee/cross-appellant Mohawk Re-Bar Services, Inc.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant C.J. Mahan Construction Company (hereinafter "Mahan") acted as the general contractor on a bridge reconstruction project located on Route 62 and Interstate 77 in the City of Canton. Mahan entered into a subcontract agreement with appellee Mohawk Re-Bar Services, Inc. (hereinafter "Mohawk"). Pursuant to the terms of the subcontract agreement, Mohawk was to supply and install rebar for the construction project. The agreement stated Mahan would provide a crane and crane operator for Mohawk's use in performing its work.
 {¶ 3} Paragraph 9 of the subcontract agreement requires Mohawk purchase and maintain workers' compensation coverage and liability coverage. Mahan required Mohawk to obtain comprehensive general liability, automobile liability, excess liability and Ohio stop gap insurance. Mahan also required Mohawk provide Mahan with an Additional Insured Endorsement ISO Form CG-20 10(11-85) or CG-20 26(11-85) under the comprehensive general liability policy where Mahan is named as an additional insured.
 {¶ 4} Mohawk purchased a commercial general liability policy and commercial umbrella policy through Cincinnati Insurance Company. The commercial general liability policy did not contain ISO Form CG-20 10(11-85) or CG-20 26(11-85). Instead, the policy contained an Additional Insured Endorsement Form GA 472 01 99.
 {¶ 5} On October 19, 2001, two employees of Mohawk were engaged in attaching bundles of rebar to a crane operated by a Mahan employee, when the crane came in contact with an overhead electrical power line. As a result, the two employees were electrocuted.
 {¶ 6} The injured employees initiated this action against Mahan and Mohawk alleging intentional tort against Mohawk and intentional tort and negligence against Mahan. Mahan then demanded Mohawk hold Mahan harmless and provide a defense pursuant to its interpretation of the subcontract agreement. Mohawk and its insurer refused.
 {¶ 7} Both Mahan and Mohawk subsequently settled with the plaintiffs, resulting in the plaintiffs dismissing their claims against both Mahan and Mohawk.
 {¶ 8} Mahan issued a "deduct change order" to Mohawk for $125,432.28 for Mohawk's alleged failure to abide by the subcontract agreement. The amount was based on an insurance agent's estimated increase of insurance costs for Mahan's defense against plaintiffs' claims. Mohawk then filed a "lien upon funds" with the Ohio Department of Transportation to attach these funds. The lien failed and ODOT paid the above amount to Mahan. Mahan withheld the funds from Mohawk. It is undisputed Mohawk completed the work in a timely and workmanlike manner.
 {¶ 9} Mahan filed a cross claim against Mohawk alleging failure to indemnify, failure to provide the contractually required insurance and failure to hold Mahan harmless. Subsequently, Mohawk cross claimed against Mahan for breach of the subcontract agreement, unjust enrichment, claim on account, payment bond claim, violation of the Prompt Pay Act and declaratory judgment.
 {¶ 10} On August 16, 2004, Mohawk filed a motion for summary judgment. On November 19, 2004, via Judgment Entry, the trial court granted summary judgment in Mohawk's favor.
 {¶ 11} Appellant Mahan now appeals the November 19, 2004 Judgment Entry assigning as error:
 I {¶ 12} "THE LOWER COURT ERRED IN GRANTING SUMMARY JUDGMENT TO MOHAWK WHEN QUESTIONS OF MATERIAL FACT EXIST."
 II {¶ 13} THE LOWER COURT ERRED IN FINDING MAHAN WAS NOT ENTITLED TO WITHHOLD MONETARY SUMS FROM MOHAWK AS A RESULT OF A DISPUTE CONCERNING THE TERMS OF A CONTRACT."
 III {¶ 14} "THE LOWER COURT ERRED IN RULING THAT MOHAWK IS ENTITLED TO RECOVER PURSUANT TO OHIO REV. CODE § 4113.62, EVEN THOUGH MOHAWK FAILED TO COMPLY WITH THE CONDITIONS PRECEDENT TO THAT STATUTE."
 IV {¶ 15} "THE LOWER COURT ERRED IN FAILING TO FIND MOHAWK DID NOT COMPLY WITH THE TERMS OF ITS SUBCONTRACT AGREEMENT WITH MAHAN IN DEFENDING AND HOLDING MAHAN HARMLESS FROM THE LAWSUIT FILED BY MOHAWK EMPLOYEES."
 V {¶ 16} "THE LOWER COURT ERRED IN CONCLUDING OHIO REV. CODE § 2305.31
RENDERS VOID THE CONTRACT OBLIGATION OF MOHAWK TO DEFEND MAHAN, PROVIDE COVERAGE, AND TO PROCURE INSURANCE TO DEFEND AND INDEMNIFY MAHAN."
 VI {¶ 17} "THE LOWER COURT ERRED IN FAILING TO CONSIDER THAT OHIO REV. CODE § 2305.31 DEALS ONLY WITH THE OBLIGATION TO INDEMNIFY FOR NEGLIGENCE AND DOES NOT PRECLUDE INDEMNIFICATION WHERE AN INTENTIONAL TORT IS ALLEGED."
 VII {¶ 18} "THE LOWER COURT ERRED IN FAILING TO CONSIDER WHETHER THE CRANE OPERATOR OF MAHAN PERFORMING WORK TASKS FOR MOHAWK WAS A BORROWED SERVANT, MAKING OHIO REV. CODE § 2305.31 INAPPLICABLE."
 VIII {¶ 19} "THE LOWER COURT ERRED IN RULING THAT A DISMISSAL OF A LAWSUIT FILED BY EMPLOYEES OF MOHAWK THAT ALLEGED BOTH INTENTIONAL TORT AND NEGLIGENCE PRECLUDES AN ACTION FOR INDEMNITY BY MAHAN."
 IX {¶ 20} "THE LOWER COURT ERRED IN FINDING THAT BENEFITS PAID UNDER THE OHIO WORKERS' COMPENSATION SYSTEM SERVES AS A WAIVER TO THE CONDUCT AND VIOLATIONS BY MOHAWK."
 X {¶ 21} "THE LOWER COURT ERRED IN CONCLUDING, EVEN IF A WORKERS' COMPENSATION STATUTE AS TO IMMUNITY IS APPLICABLE, MOHAWK DID NOT WAIVE THAT IMMUNITY."
 XI {¶ 22} "THE LOWER COURT ERRED IN FAILING TO CONSIDER WHETHER THE TERMS OF POLICIES OF INSURANCE PROVIDED BY MOHAWK TO MAHAN REQUIRE BOTH A DUTY TO DEFEND MAHAN AND POLICY COVERAGE OF MAHAN FOR THE CAUSES OF ACTION ALLEGED BY THE EMPLOYEES OF MOHAWK.
 XII {¶ 23} "THE LOWER COURT ERRED IN CONCLUDING THAT DISMISSAL OF ALLEGATIONS INVOLVING CONTRIBUTION BY JOINT TORTFEASORS TO THE PLAINTIFFS IMPACTS THE CLAIM OF MAHAN AGAINST MOHAWK AND THE INSURANCE CARRIER.
 XIII {¶ 24} "THE LOWER COURT ERRED IN CONCLUDING THAT THE DECISION INVOLVING THE CLAIMS INVOLVING MOHAWK DISPOSED OF THE CLAIM INVOLVING CINCINNATI INSURANCE COMPANY.
 XIV {¶ 25} "THE LOWER COURT ERRED IN FAILING TO CONSIDER PRIOR TO ITS DECISION WHETHER CINCINNATI INSURANCE COMPANY HAD A DUTY, UNDER ITS INSURANCE POLICY, TO DEFEND MAHAN.
 XV {¶ 26} "THE LOWER COURT ERRED IN FAILING TO CONSIDER PRIOR TO ITS DECISION WHETHER CINCINNATI INSURANCE COMPANY HAD A DUTY, UNDER ITS INSURANCE POLICY, TO INDEMNIFY MAHAN.
 XVI {¶ 27} "THE LOWER COURT ERRED IN FAILING TO CONSIDER PRIOR TO ITS DECISION WHETHER CINCINNATI INSURANCE COMPANY BREACHED ITS OBLIGATIONS UNDER ITS INSURANCE POLICY FOR MAHAN."
 {¶ 28} Appellant's I, V, VII, IX, X, XI, XII, XIII, XIV, XV, and XVI assignments of error raise common and interrelated issues; therefore, we will address the arguments together.
 {¶ 29} Appellant maintains the trial court erred in granting summary judgment in favor of Mohawk. Specifically, appellant argues the trial court erred in concluding R.C. Section 2305.31 renders void the contract obligation of Mohawk to defend Mahan, provide coverage and to procure insurance to defend and indemnify Mahan.
 {¶ 30} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. Therefore, we must refer to Civ .R. 56, which provides, in pertinent part:
 {¶ 31} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only there from, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 32} Pursuant to the above rule, a trial court may not enter summary judgment if it appears that a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the nonmoving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates that the nonmoving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the nonmoving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citingDresher v. Burt (1996), 75 Ohio St.3d 280, 293.
 {¶ 33} Ohio Revised Code Section 2305.31 states:
 {¶ 34} "A covenant, promise, agreement, or understanding in, or in connection with or collateral to, a contract or agreement relative to the design, planning, construction, alteration, repair, or maintenance of a building, structure, highway, road, appurtenance, and appliance, including moving, demolition, and excavating connected therewith, pursuant to which contract or agreement the promisee, or its independent contractors, agents or employees has hired the promisor to perform work,purporting to indemnify the promisee, its independent contractors,agents, employees, or indemnitees against liability for damages arisingout of bodily injury to persons or damage to property initiated orproximately caused by or resulting from the negligence of the promisee,its independent contractors, agents, employees, or indemnitees is againstpublic policy and is void. Nothing in this section shall prohibit any person from purchasing insurance from an insurance company authorized to do business in the state of Ohio for his own protection or from purchasing a construction bond." (Emphasis added.)
 {¶ 35} Mahan maintains the trial court improperly applied the anti-indemnity statute (Section 2305.31) by granting Mohawk summary judgment as the present case does not involve a "building, structure, highway, road, appurtenance and appliance," but rather a bridge. Mahan cites Stickovich v. Cleveland (2001), 143 Ohio App.3d 13. However, upon review, we find the Stickovich decision inapplicable as the bridgework involved in the case sub judice connected Route 62 and Interstate 77; therefore the project pertained to a highway or road within the meaning of R.C. 2305.31. Accordingly, the anti-indemnity statute applies.
 {¶ 36} The subcontract agreement in the case sub judice includes an indemnity clause at paragraph 20, stating:
 {¶ 37} "Subcontractor agrees to indemnify, protect and save harmless the Contractor from any and all actions, lawsuits, claims, costs, loss, damage, or liability of any kind or nature, including damage to property, even if owned, leased or used by the Subcontractor, or of injuries to persons, including death, whether employees of Subcontractor, which are subject to Workers' Compensation, or others,when such liability results from or on account of any act or omission ofSubcontractor or any of his officers, agents, employees or servants, orif such loss or damage is claimed to be as a result of the joint orconcurrent acts of contractor and Subcontractor." (Emphasis added.)
 {¶ 38} We find, pursuant to Kendall v. U.S. Dismantling Co. (1985),20 Ohio St.3d 61, the indemnity clause is void. In Kendall, the Ohio Supreme Court held:
 {¶ 39} "R.C. 2305.31 prohibits indemnity agreements, in the construction-related contracts described therein, whereby the promisor agrees to indemnify the promisee for damages caused by or resulting from the negligence of the promisee, regardless of whether such negligence is sole or concurrent.
 {¶ 40} "Therefore, where the indemnitee in a construction contract is solely liable, or where liability is concurrent to that of the indemnitor, R.C. 2305.31 prohibits indemnity."
 {¶ 41} Based upon the above, we find R.C. 2305.21 prohibits the indemnity clause at issue as the language in the agreement clearly indemnifies Mahan for damages claimed as a result of the joint or concurrent acts of Mahan and Mohawk.
 {¶ 42} Mahan argues whether only Mohawk is liable for negligence, and not Mahan, is a question of fact. However, it is undisputed Plaintiffs' claims against Mahan assert Mahan was independently negligent, not simply vicariously liable for Mohawk's actions or inactions. As noted, supra, Mahan settled with the underlying plaintiffs on the claims of negligence and intentional tort. The case was settled based upon the allegations set forth in the complaint. By settling the underlying litigation, Mahan gave up its right to challenge whether Mohawk was solely liable. Therefore, R.C. Section 2305.31 bars enforcement of the agreement.
 {¶ 43} In Kemmeter v. McDaniel Backhoe Service (2000),89 Ohio St.3d 409, the Supreme Court addressed a similar issue, stating:
 {¶ 44} "Here, the trial court should have first determined whether thecauses of action the plaintiff alleged against Fibbe [contractor] arose from activities under Ruehl's [subcontractor] contractual control. If so, Ruehl [subcontractor] could have assumed Fibbe's [contractor's] defense, and the prospect of having to pay the fees of two sets of attorneys would not have arisen. If plaintiff's claims arose from activities under Fibbe's [contractor's] contractual control, then Fibbe [contractor] would have to assume its own defense costs, no matter theoutcome at trial.
 {¶ 45} Clearly, the Supreme Court directed our analysis to the causes of action the plaintiffs alleged against Mahan individually in determining whether the indemnification agreement is void. Here, the plaintiffs alleged negligence and intentional tort against Mahan. Both Mahan and Mohawk settled the claims as alleged with the plaintiffs, without further evidence. There is no dispute the settlement extinguished Mahan's liability to the plaintiffs in the underlying litigation. Further, Mahan did not clearly and expressly reserve rights against Mohawk; therefore, the settlement agreement bars further action. Jonesv. Ruhlin Co. (October 24, 1990), Summit Co. App. No. 14568. Mahan cannot now resurrect potential defenses in the underlying litigation to support its arguments herein with regard to the indemnification agreement. We conclude, no genuine issue of material fact remains, and Mohawk is entitled to summary judgment as to the indemnification agreement.
 {¶ 46} As noted above, the plaintiff employees were employed by Mohawk and were injured while signaling a crane operator employed by Mahan. Mahan argues the crane operator was a borrowed servant, under the direction and control of Mohawk. Again, Mahan settled the alleged negligence and intentional tort claims with the Plaintiffs, thereby waiving its opportunity to present evidence on the borrowed servant issue. Therefore, we find appellant's argument unpersuasive.
 {¶ 47} Mahan's assignments of error are overruled.
 {¶ 48} In the II and III assignments of error, Mahan asserts a contractual entitlement to retain monies from the contract based upon Mohawk's breach. Accordingly, Mahan concludes its actions did not violate the Ohio Prompt Pay Act.
 {¶ 49} The trial court concluded Mohawk was entitled to recover the amounts withheld by Mahan, with interest, pursuant to the Prompt Pay Act, R.C. Sec. 4113.61.
 {¶ 50} The statute provides:
 {¶ 51} "The contractor . . . may withhold amounts that may be necessary to resolve disputed liens or claims involving the work or labor performed or material furnished by the subcontractor."
 {¶ 52} The subcontract agreement between the parties included the following provision:
 {¶ 53} "Contractor may reserve from any amounts due or to become due to Subcontractor sums equal to any indebtedness owed by Subcontractor for labor or material or equipment or any other obligations of Subcontractor on this project for which Contractor may be liable and as to which Contractor has received notice from Subcontractor or from any claimant. In the event of any breach by Subcontractor of any provisions or obligations of this subcontract, Contractor shall have the right to retain out of and deduct from any payments due or to become due to Subcontractor an amount sufficient to completely protect Contractor from any and all loss, damage or expenses therefore, until the breach has been satisfactorily remedied or adjusted by Subcontractor."
 {¶ 54} Specifically, Mahan maintains Mohawk breached the indemnity clause of the subcontract agreement; therefore, pursuant to the subcontract agreement, Mahan may retain any payments due or to become due to as a result of Mohawk's breach of the indemnification clause. However, as addressed, supra, we find the indemnification clause found in the parties' subcontract agreement void as against public policy. Likewise, Mahan's withholding of funds pursuant to the indemnification clause would also violate public policy.
 {¶ 55} Further, in Electrical-Mechanical, Inc. v. Construction One,Inc., 102 Ohio St.3d 1, 2004-Ohio-1748, the Ohio Supreme Court addressed this issue:
 {¶ 56} "Therefore, pursuant to R.C. 4113.61(A)(1), if a subcontractor makes a timely request for payment, a contractor must pay the subcontractor in proportion to the work completed within ten calendar days of receiving payment from the owner. A contractor, however, is permitted to withhold "amounts that may be necessary to resolve disputed liens or claims involving the work or labor performed or material furnished by the subcontractor."
 {¶ 57} "Failure to comply with these provisions obligates a contractor to pay interest on the overdue payment at a rate of 18 percent per annum. R.C. 4113.61(A)(1) and (B)(1). A subcontractor also may file a civil action to recover the amount due and the statutory interest. R.C.4113.61(B)(1). If the court determines that the contractor has not complied with the prompt-payment statute, the court must award the subcontractor the statutorily prescribed interest. Id. In addition, the prevailing party is entitled to recover reasonable attorney fees, unless such an award would be inequitable, together with court costs. R.C.4113.61(B)(1) and (B)(3).
 {¶ 58} "In the present case, Construction One argues that R.C. 4113.61
permits it to withhold estimated costs of securing a lien substitute, i.e., bond premiums, and anticipated attorney fees directly relating to resolving Masiongale's breaches of the lien-waiver and forum-selection clauses. These breaches, however, did not create "disputed liens or claims involving the work or labor performed or material furnished by the subcontractor," within the meaning of R.C. 4113.61(A)(1). (Emphasis added.)
 {¶ 59} "Although these breaches concern disputes arising out of a construction contract, the lien-waiver and forum-selection provisions at issue here are procedural in nature, as they relate either to the right of a party to secure its payment with a lien or to the situs of the tribunal for the adjudication of disputes. They do not, however, concern the substantive aspects of performing the work or labor or providing any material under the contract. Cf. Consortium Communications v. ClevelandTelecommunications, Inc. (Feb. 10, 1998), Franklin App. No. 97APG08-1090, 1998 WL 63538 (permitting a contractor to withhold payment pursuant to R.C. 4113.61 when the parties disputed additional amounts concerning labor-related transportation expenses).
 {¶ 60} "In R.C. 4113.61, the only justifications for withholding payment relate to disputed liens or claims involving the performance of work or labor or the furnishing of material. If the General Assembly had intended to include other types of disputes, such as those over breaches of lien-waiver and forum-selection clauses, as further justification for a contractor to withhold payment, it could have expanded the statute to include these and other types of disputes. It chose not to do so."
 {¶ 61} Upon review, we find Mahan's claims Mohawk breached the subcontract agreement do not involve the performance of the work or labor or the furnishing of material. Accordingly, the trial court properly found Mahan breached the prompt pay statute in withholding the funds from payment.
 {¶ 62} The second and third assignments of error are overruled.
 {¶ 63} In the IV, VI, and VIII assignments of error Mahan maintains the trial court erred in not finding Mohawk responsible for indemnifying Mahan as to the intentional tort allegation. Mahan asserts the anti-indemnity statute speaks only to negligence, not an intentional act, and Mohawk owes a defense and insurance coverage to Mahan for the "intentional wrongdoing" allegations of the complaint provided by Cincinnati's Stop Gap coverage for an intentional act.[1]
 {¶ 64} Addressing the argument raised on appeal, Mahan maintains Mohawk was required to name Mahan as an "additional insured" under the insurance policies. Specifically, Mahan asserts Mohawk breached the subcontract agreement by failing to provide the Additional Insured Endorsement Forms CG-20(11-85) or CG-20 26(11-85). Mahan argues Mohawk did not provide the contractually required policy endorsement. Mohawk provided Form GA 472 01 99.
 {¶ 65} Form CG-20 10(11-85) states:
 {¶ 66} "WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" for that insured by or for you."
 {¶ 67} Form CG-20 26(11-85) states:
 {¶ 68} "WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations or premises owned by or rented to you."
 {¶ 69} The form provided by Mohawk, GA 472 01 99 states in pertinent part:
 {¶ 70} "1. WHO IS AN INSURED (Section II) is amended to include as an insured:
 {¶ 71} "2.e Any person or organization, hereinafter referred to as ADDITIONAL INSURED, for whom you are required to add as an additional insured on this Coverage Part under:
 {¶ 72} (1) A written contract or agreement; or
 {¶ 73} (2) An oral agreement or contract where a certificate of insurance showing that person or organization as an additional insured has been issued; but only with respect to liability arising out of your ongoing operations performed for that additional insured by you or on your behalf. A person's or organization's status as an insured under this endorsement ends when your operations for that insured are completed.
 {¶ 74} * * *
 {¶ 75} 4. COVERAGES (Section I) is amended to include:
 {¶ 76} The insurance provided to the additional insured does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the
 {¶ 77} * * *
 {¶ 78} b. Sole negligence or willful misconduct of, or for defects in design furnished by, the additional insured or its "employees".
 {¶ 79} * * *
 {¶ 80} Mohawk submitted the affidavit of James Randall Stenhouse, Vice President of Leonard Insurance Services, in support of its motion for summary judgment. The affidavit testified Form GA 472 01 99 provides equivalent coverage to the additional insured when an accident or loss occurs while Mohawk is still on the job, as compared to Forms CG-20 10(11-85) or CG-20 26(11-85). Upon review, Mahan did not demonstrate a genuine issue of material fact exists as to the equivalency of the forms.
 {¶ 81} We agree with the trial court, regardless of which additional insured endorsement is applied, the policy would only cover Mahan for liability arising out of Mohawk's work for Mahan. As noted supra, the plaintiffs in the underlying litigation alleged negligence against Mahan only, not vicariously through Mohawk; therefore, the additional insured endorsements could not apply as the plaintiffs' allegations would be excluded as a matter of law under the endorsement because the allegations involved Mahan's own actions, not Mohawks actions arising out of their work for Mahan.
 {¶ 82} Mahan maintains Mohawk's insurance provider, Cincinnati Insurance, was required to provide Mahan a defense of the underlying plaintiffs' claim of intentional tort against Mahan. However, Mohawk provided the contractually required Ohio stop gap insurance. Therefore, Mahan's arguments go to Cincinnati, not Mohawk. Accordingly, the trial court properly granted Mohawk summary judgment, and Mahan's fourth, sixth and eighth assignments of error are overruled.
 {¶ 83} We now address Mohawk's cross-appeal, assigning as error:
 I. {¶ 84} THE COURT ERRED IN FAILING TO GRANT SUMMARY JUDGMENT IN FAVOR OF MOHAWK AND AGAINST MAHAN ON MAHAN'S CROSS-CLAIMS ON THE INDEPENDENT BASIS THAT MAHAN'S CLAIMED DAMAGES ARE BASED COMPLETELY ON SPECULATION."
 II. {¶ 85} IF THIS COURT REVERSES THE TRIAL COURT'S GRANT OF SUMMARY JUDGMENT IN FAVOR OF MOHAWK AND AGAINST MAHAN ON MOHAWK'S PROMPT PAYMENT ACT CLAIM, MOHAWK IS ENTITLED TO SUMMARY JUDGMENT IN ITS FAVOR ON ITS CLAIMS OF BREACH OF CONTRACT, UNJUST ENRICHMENT AND CLAIM ON ACCOUNT."
 {¶ 86} Having determined the trial court properly granted summary judgment in favor of cross-appellant Mohawk in or disposition of Mahan's direct appeal, we find it unnecessary to discuss the merits of Mohawk's cross-appeal as the assignments of error are moot.
 {¶ 87} The November 19, 2004 Judgment Entry of the Stark County Court of Common Pleas is affirmed.
Hoffman, P.J., Farmer, J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, The November 19, 2004 Judgment Entry of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] Initially, we note R.C. 2305.31 clearly provides indemnification agreements indemnifying a promisee for its own negligence are against public policy; therefore, void. We would find equally if not more compelling the argument agreements indemnifying a promisee for its intentional acts are against public policy; therefore, void.