OPINION *Page 2 
{¶ 1} Appellant, C.J. Mahan Construction Company, was the general contractor on a bridge reconstruction project located on Route 62 and Interstate 77 in Canton, Ohio. Appellant entered into a subcontract agreement with Mohawk Re-Bar Services, Inc. to supply and install rebar for the construction project. Appellant provided a crane and crane operator for Mohawk's use in performing its work.
 {¶ 2} Paragraph 9 of the subcontract agreement between appellant and Mohawk required Mohawk to purchase and maintain workers' compensation coverage and liability coverage, and obtain comprehensive general liability, automobile liability, excess liability, and Ohio stop gap insurance. Appellant also required Mohawk to name it as an additional insured under its comprehensive general liability policy.
 {¶ 3} Mohawk purchased a commercial general liability policy and commercial umbrella policy through appellee, Cincinnati Insurance Company. The commercial general liability policy contained an Additional Insured Endorsement Form, GA 472 01 99.
 {¶ 4} On October 19, 2001, two Mohawk employees, plaintiffs herein, Jeffrey Tingler and Curt Naus, were engaged in attaching bundles of re-bar to a crane operated by an employee of appellant's when the crane came in contact with an overhead electrical power line. As a result, the two employees were shocked and sustained injuries.
 {¶ 5} On November 16, 2001, plaintiffs filed a complaint against appellant and Mohawk alleging intentional tort against Mohawk and intentional tort and negligence *Page 3 
against appellant.[1] Appellant expected Cincinnati to defend the claims pursuant to the terms of the Additional Insured Endorsement. Cincinnati refused to defend the claims against appellant. Thereafter, appellant filed a cross-claim against Mohawk alleging Mohawk was primarily liable for the injuries to the plaintiffs. Appellant sought contribution and indemnity from Mohawk.
 {¶ 6} On March 29, and July 22, 2004, plaintiffs dismissed their claims against Mohawk and appellant, respectively, pursuant to a settlement agreement.
 {¶ 7} On August 16, 2004, Mohawk filed a motion for summary judgment on appellant's amended cross-claim filed December 12, 2003. On October 27, 2004, appellant filed a third party complaint against Cincinnati alleging breach of contract in failing to provide a defense. By judgment entry filed November 19, 2004, the trial court granted Mohawk's motion for summary judgment. On appeal, this court affirmed this decision. See,C.J. Mahan Construction Company v. Mohawk Re-Bar Services, Inc., Stark App. No. 2004CA00387, 2005-Ohio-5427.
 {¶ 8} Following the appeal, appellant filed a motion for summary judgment on October 30, 2006 on its third party complaint against Cincinnati. On December 6, 2006, Cincinnati filed a brief in opposition and a cross-motion for summary judgment. By judgment entry filed February 20, 2007, the trial court denied appellant's motion and included Civ.R. 54(B) language, "[t]here is no just reason for delay."
 {¶ 9} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows: *Page 4 
 I {¶ 10} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING MAHAN'S MOTION FOR SUMMARY JUDGMENT SINCE THERE IS NO DISPUTE THAT MAHAN WAS ENTITLED TO A DEFENSE UNDER THE CLEAR AND UNAMBIGUOUS LANGUAGE OF THE CINCINNATI POLICY."
 II {¶ 11} "THE TRIAL COURT ABUSED ITS DISCRETION BY CERTIFYING THE DENIAL OF A MOTION FOR SUMMARY JUDGMENT AS A FINAL APPEALABLE ORDER."
 I {¶ 12} Appellant claims the trial court erred in denying its motion for summary judgment. We disagree.
 {¶ 13} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in State ex rel. Zimmerman v. Tompkins, 75 Ohio St.3d 447, 448,1996-Ohio-211:
 {¶ 14} "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex. rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511,628 N.E.2d 1377, 1379, *Page 5 
citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274."
 {¶ 15} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35.
 {¶ 16} Appellant's summary judgment motion involved its third party claims against Cincinnati. Appellant sought judgment for Cincinnati's failure to defend under a policy of insurance wherein appellant was named as an additional insured. The basis of appellant's third party complaint was for damages as a result of Cincinnati's failure to defend appellant in the underlying intentional tort action.
 {¶ 17} The Additional Insured Endorsement in this case included the following:
 {¶ 18} "1. WHO IS AN INSURED (Section II) is amended to include as an insured:
 {¶ 19} "2.e. Any person or organization, hereinafter referred to as ADDITIONAL INSURED, for whom you are required to add as an additional insured on this Coverage Part under:
 {¶ 20} "(1) A written contract or agreement; or
 {¶ 21} "(2) An oral agreement or contract where a certificate of insurance showing that person or organization as an additional insured has been issued; but only with respect to liability arising out of your ongoing operations performed for that additional insured by you or on your behalf. A person's or organization's status as an *Page 6 
insured under this endorsement ends when your operations for that insured are completed.
 {¶ 22} "* * *
 {¶ 23} "4. COVERAGES (Section I) is amended to include:
 {¶ 24} "The insurance provided to the additional insured does not apply to `bodily injury', `property damage', `personal injury' or `advertising injury' arising out of the
 {¶ 25} "* * *
 {¶ 26} "b. Sole negligence or willful misconduct of, or for defects in design furnished by, the additional insured or its `employees'."
 {¶ 27} We have previously addressed the scope of this "additional insured" coverage in C.J. Mahan Construction Company v. Mohawk Re-BarServices, Inc., Stark App. No. 2004CA00387, 2005-Ohio-5427 (hereinafter"Mahan I"). The following assignments of error in Mahan I included arguments concerning the scope of coverage under the Cincinnati policy:
 XI {¶ 28} "THE LOWER COURT ERRED IN FAILING TO CONSIDER WHETHER THE TERMS OF POLICIES OF INSURANCE PROVIDED BY MOHAWK TO MAHAN REQUIRE BOTH A DUTY TO DEFEND MAHAN AND POLICY COVERAGE OF MAHAN FOR THE CAUSES OF ACTION ALLEGED BY THE EMPLOYEES OF MOHAWK.
 XII {¶ 29} "THE LOWER COURT ERRED IN CONCLUDING THAT DISMISSAL OF ALLEGATIONS INVOLVING CONTRIBUTION BY JOINT TORTFEASORS TO THE *Page 7 
PLAINTIFFS IMPACTS THE CLAIM OF MAHAN AGAINST MOHAWK AND THE INSURANCE CARRIER.
 XIII {¶ 30} "THE LOWER COURT ERRED IN CONCLUDING THAT THE DECISION INVOLVING THE CLAIMS INVOLVING MOHAWK DISPOSED OF THE CLAIM INVOLVING CINCINNATI INSURANCE COMPANY.
 XIV {¶ 31} "THE LOWER COURT ERRED IN FAILING TO CONSIDER PRIOR TO ITS DECISION WHETHER CINCINNATI INSURANCE COMPANY HAD A DUTY, UNDER ITS INSURANCE POLICY, TO DEFEND MAHAN."
 {¶ 32} In Mahan I, we determined the scope of the policy as follows at ¶ 81:
 {¶ 33} "We agree with the trial court, regardless of which additional insured endorsement is applied, the policy would only cover Mahan for liability arising out of Mohawk's work for Mahan. As noted supra, the plaintiffs in the underlying litigation alleged negligence against Mahan only, not vicariously through Mohawk; therefore, the additional insured endorsements could not apply as the plaintiffs' allegations would be excluded as a matter of law under the endorsement because the allegations involved Mahan's own actions, not Mohawks actions arising out of their work for Mahan."
 {¶ 34} Therefore, the terms of the policy will cover appellant for injury arising out of Mohawk's work for appellant. Conversely, it would not cover appellant for any of its own acts of negligence or own intentional tort. For example, if construction work performed by Mohawk caused injury or liability to appellant, e.g., a re-bar failed and injured another, any suit against appellant would have to be defended by Cincinnati. It *Page 8 
would not cover the negligent acts of appellant's crane operator in causing shock to Mohawk's employees or in providing an unsafe work place for Mohawk's employees.
 {¶ 35} The underlying cause of action involved the operation of a crane by appellant's employee and the placement of re-bar by Mohawk's employees. As a result of the crane's position in proximity to electrical power lines, the crane came in contact with the lines and caused an electric shock resulting in injury to the plaintiffs. The complaint and amended complaint claimed appellant was negligent in the placement and operation of the crane and in supervising and training its employee, failed to provide proper equipment, failed to provide proper safety devices and warnings, failed to comply with safety codes, failed to contact the power company, and failed to provide a safe workplace. It further claimed an intentional tort by both appellant and Mohawk in failing to provide a safe workplace and in permitting a dangerous condition to exist. The amended complaint filed November 19, 2003 claimed joint and several liability of each party.
 {¶ 36} The complaint against appellant and Mohawk was dismissed via a general dismissal after mediation and a settlement by the parties. The issue of joint/several liability or who actually controlled the workplace and the location of the crane was never litigated.
 {¶ 37} Appellant argues because of the possibility that some act alone by Mohawk caused damage to appellant (being sued for negligence and intentional tort), Cincinnati had a duty to defend. We disagree with this analysis of the coverage sub judice. Being sued for negligence is not per se what was contemplated by the clear and unambiguous language of the "additional insured" coverage. *Page 9 
 {¶ 38} Given our opinion in Mahan I and the clear reading of ¶ 81 therein, we find the doctrine of law of the case applies:
 {¶ 39} "Briefly, the doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels. * * * Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law.
 {¶ 40} "The doctrine is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results. * * * However, the rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution. * * *
 {¶ 41} "In pursuit of these goals, the doctrine functions to compel trial courts to follow the mandates of reviewing courts.* * * Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law.* * * Moreover, the trial court is without authority to extend or vary the mandate given.* * *" Nolan v.Nolan (1984), 11 Ohio St.3d 1, 3-4. (Citations omitted.)
 {¶ 42} We further note the Supreme Court of Ohio denied jurisdiction to hear the issues of Mahan I. See, C.J. Mahan Construction Company v.Mohawk Re-Bar Services, Inc., 108 Ohio St.3d 1489, 2006-Ohio-962.
 {¶ 43} Assignment of Error I is denied. *Page 10 
 II {¶ 44} Based upon our decision in Assignment of Error I, this assignment is moot.
 {¶ 45} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
 Farmer, P.J. Wise, J. and Edwards, J. concur. *Page 11 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed.
[1] Mr. Tingler died on November 22, 2002. Terrell Cross, as duly appointed estate representative, was substituted as plaintiff Tingler. A first amended complaint was filed on November 19, 2003. *Page 1